**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:<br><br>FIRST MAGNUS FINANCIAL CORP.,<br><br>Debtor.<br><br>LARRY LATTIG, LITIGATION TRUSTEE FOR THE FIRST MAGNUS LITIGATION TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>GURPREET S. JAGGI, et al.,<br><br>Defendants. | No. CV 10-232-TUC-CKJ<br>BK 4:07-1578-JMM<br><br>**ORDER** |

Pending before the Court is the Motion for Leave to Appeal [Doc. 2] filed by Larry Lattig, Litigation Trustee for the First Magnus Litigation Trust (the "Motion"). Also pending before the Court is the Motion to Expedite Appeal [Doc. 5]. Oral argument has been requested. The Court declines to schedule this matter for oral argument

*Factual and Procedural Background*[1]

In July 1996, Gurpreet Jaggi ("Jaggi"), Thomas Sullivan, Sr. ("Sullivan, Sr."), ("Sullivan, Jr."), Bill Gaylord ("Gaylord"), Gary Malis ("Malis"), Dominick Marchetti

---

[1] Unless otherwise stated, the facts are taken from the Motion for Leave to Appeal.

("Marchetti"), and Karl Young ("Young") formed the mortgage origination company First Magnus Financial Corp. ("First Magnus" or "Debtor"). On August 21, 2007, First Magnus filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Arizona (the "bankruptcy court"), Case No. 4-BK-07-1578-PHX-JMM (the "bankruptcy case"). More than 5,500 employees lost their jobs nationwide, and, like hundreds of others, because creditors of First Magnus.

First Magnus continued the management and operation as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.[2] A Second Amended Plan of Liquidation ("Plan"), dated January 4, 2008, was confirmed by the Bankruptcy Court on February 28, 2008 ("Confirmation Order"). The Litigation Trustee, Larry Lattig (the "Litigation Trustee"), was deemed appointed in accordance with 11 U.S.C. §§ 1123 to investigate and prosecute claims against, among others, former insiders of First Magnus.

The Litigation Trustee commenced the adversary proceeding against former insiders of First Magnus and certain affiliated entities. The Original Complaint alleged, *inter alia*, that former insiders of First Magnus stripped First Magnus of approximately $300,000,000 in capital for their own personal benefit in an atempt to hinder, delay, and defraud creditors, and at a time when First Magnus was insolvent, had no shareholder equity, and had debbts that greatly exceeded the value of its assets at fair valuation. The Original Complaint further alleged that (1) former insiders of First Magnus caused certain transfers to be made to or for the benefit of its parent company, First Magnus Capital, Inc. ("Capital"), a co-defendant owned and operated by former insiders of First Magnus, (2) former insiders of First Magnus caused certain transfers to be made to or for the benefit of Magnus Corporation ("Magnus"), a co-defendant owned and operated by Sullivan, Sr., Sullivan, Jr., and Sabina Sullivan, and

---

[2]Under chapter 11 of the Bankruptcy Code, a debtor-in-possession retains control of the bankruptcy estate, must manage it for the benefit of the estate and the estate's creditors, occupies the same role as a bankruptcy trustee, and is entitled to all the rights, powers, and duties of a trustee. 11 U.S.C. § 1107(a); *see also In re Smartworld Technologies, LLC*, 423 F.3d 166, 175 (2nd Cir. 2005).

- 2 -

caused certain transfers to be made to or for the benefit of First Magnus Realty ("Realty"), a co-defendant that owned First Magnus's former headquarters, (3) Magnus managed Realty, and that the members of Realty included Sullivan, Sr., and Indus Holdings LLC, a limited liability company owned and managed by Jaggi, and (4) certain insiders of First Magnus and affiliated entities misappropriated certain propriety assets of First Magnus during the course of the bankruptcy case.

On April 28, 2009, the bankruptcy court ordered the Litigation Trustee to amend the 194 page Original Complaint, which included 96 claims against 43 defendants, because of its length and detailed factual specificity. The court stated:

> It should not be necessary, at this initial stage of the proceedings, for the Defendants to admit or deny each of the very specific and lengthy factual paragraphs pled by the Trustee. These types of specific factual recitations are more akin to what the parties might develop as the case advances, and perhaps be more appropriate to a motion for summary judgment, once the parties have had a more deliberate period of time to exchange information and work through discovery. For now, the Trustee needs to more generally describe exactly what it is that each Defendant has done that creates legal liability, and then state his legal theories and prayers for relief more succinctly.
>
> As a legal matter, the Complaint is too cumbersome, and violates Fed.R.Civ.P. 8(a), which call for "a short and plain statement" of the claims and relief sought. From there, then, the parties can proceed to discovery, and collaborate on how best to winnow down the case to its essence. Until the Complaint is reduced to its essence, the court is also unable to determine merits of certain Defendants' motions to dismiss (for reasons other than Rule 8(a) on substantive grounds.)

Response, Ex. A, p. 2. The court directed counsel to comply with Rule 8 by submitting a substantially edited revision and stated that the "entire Complaint should be refined to simply get to the point: who is getting sued, what are the theories, and how much is demanded." *Id*. at 2-3.

On May 13, 2009, the Litigation Trustee filed the 89 page First Amended Complaint, which included 52 claims against 41 defendants. On September 11, 2009, the bankruptcy court ordered the Litigation Trustee to amend the First Amended Complaint. The court stated:

> After considering the views of each party as to whether the amended complaint satisfies the legal standards of pleadings, the court rules as follows:
>
> 1. No defendant need answer any of the first 174 paragraphs, found at pages 1-44 of the First Amended Complaint. This is because those paragraphs suffer

> the same infirmities as originally filed. They are not the short, plain statement required by Rule 8, Fed.R.Civ.P. To the extent that paragraphs 1-174 are "incorporated," in any fashion, into the balance of the First Amended Complaint, no defendant need answer them. Those paragraphs, at this stage of the case, will simply be considered to be Plaintiff's subjective views, in narrative form, of matters which must later be proven.
>
> 2. As to <u>each</u> of the counts in the First Amended Complaint, the Plaintiff is <u>required</u> to <u>specifically</u> identify which individual or entity against whom relief is being sought, and <u>specifically</u> set forth the monetary amount or declaratory relief sough as to each count, and as to each affected defendant . . . As the First Amended Complaint now reads, it is difficult to understand which specific defendants are accused of wrongdoing as to each count. This can be accomplished by simply noting, as to each count: "Defendants affect" and "Relief sought as to Defendant ___," and then making the names and amounts (or declaratory relief) known clearly. In this way, guesswork is avoided, and each defendant is on notice as to which counts apply to them. General terms, such as "directors and officers" shall not be used in the abstract. Due to the numerous parties in this case, it is imperative that each defendant have clear notice of which counts apply to them.

September 11, 2009, Order, pp. 2-3. On October 2, 2009, the Litigation Trustee filed the Second Amended Complaint ("SAC").

The Litigation Trustee asserts that the SAC identified three significant stock redemptions in the aggregate amount of approximately $70,000,000, approximately $50,000,000 in officer bonuses, approximately $37,000,000 in shareholder distributions, approximately $48,300,000 in transactions between First Magnus and Capital related to a revolving line of credit, approximately $26,000,000 in payments made to or for the benefit of Sullivan, Sr., on two separate promissory notes, approximately $50,000,000 in assets transferred to Capital. The SAC also identified a scheme to misappropriate First Magnus' assets and proprietary materials, insiders' utilization of these materials in existing and newly formed businesses, and unjust gains realized by taking, utilizing, marketing, and selling the assets. Additionally, the SAC identified a series of violations of generally accepted accounting principles, a failure to adequately reserve for and record loan losses and repurchase and indemnification obligations, overstatements of loan values, improper recognition of income for the purpose of artificially inflating alleged pre-tax net profits, an ability to meet obligations as they become due with respect to the obligations First Magnus owed to its warehouse lenders and take-out investors, and unreasonably small amounts of

capital on hand to meet First Magnus' outstanding obligations.

On March 3, 2010, the bankruptcy court issued a Memorandum Decision which granted, in part, certain Motions to Dismiss and denied other Motions to Dismiss. Motion, Ex. B. The court stated:

> As the court previously explained, it is not helpful to consider, as part of the Complaint's necessary allegations, the general narratives contained in paragraphs 1-154, found at pages 1-40 of the latest Second Amended Complaint[.]
>
> The court, as it noted before, will treat each actual count as free-standing, and now will test each challenged count to ascertain whether claims are stated under the Federal Rules of Procedure. That analysis begins on p. 40 of the Complaint. The first 154 paragraphs will not be considered, as they are and always have been extraneous.

Motion, Ex. B, p. 3.

No motion to reconsider was presented to the bankruptcy court. Defendants have answered as directed by the bankruptcy court and the remaining fraudulent transfer claims are proceeding in bankruptcy court.

The Litigation Trustee requests that the Court permit an interlocutory appeal, reverse the Order of the bankruptcy court, direct the bankruptcy court to deny the Motions to Dismiss and order Defendants to answer the SAC in its entirety. Defendants have filed a Response to the Litigation Trustee's Motion for Leave to Appeal ("Response").

*Jurisdiction over Interlocutory Appeal*

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered by a bankruptcy court. 28 U.S.C. § 158(a)(1). If an appellant is appealing an interlocutory order of the bankruptcy court, the appellant must seek leave from the district court prior to filing a motion to appeal an interlocutory order. 28 U.S.C. § 158(a)(3); Fed. R. Bankr.P. 8001(b). However, while district courts must hear appeals from final decisions, they have discretionary authority to hear interlocutory appeals. *In re City of Desert Hot Springs*, 339 F.3d 782, 787 (9th Cir.2003). The applicable rules do not provide any particular standard for evaluating a motion for leave to appeal an interlocutory appeal. Fed.R.Bankr.P. 8003.

Generally, courts disfavor interlocutory appeals and only grant leave to appeal where three extraordinary factors are met: "[1] refusal would result in wasted litigation and expense, [2] the appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion, and [3] an immediate appeal would materially advance the ultimate termination of the litigation." *In re NSB Film Corp.*, 167 B.R. 176, 180 (9th Cir.1994); *In re Burke*, 95 B.R. 916, 917 (9th Cir. BAP 1989); *In re 450 S. Burlington Partners LLC*, No. CV 09-4097 PSG, 2009 WL 2460880, *5 (C.D.Cal. 2009); *Sims v. Sunnyside Land, LLC*, 425 B.R. 284, 290 (W.D. La. 2010), *citation omitted* ("[b]ecause interlocutory appeals interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties, they are not favored."). Indeed, another district court has stated:

> Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until the entry of a final judgment, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist.

*In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 557 (E.D. Pa. 2009); *see also In re Wyss*, 2008 WL 3850386, *1 (W.D. Wis. 2008) ("More often than not a bankruptcy court is correct in its determination. However, even if error exists the issue for which immediate appeal is sought may be mooted by subsequent proceedings. Accordingly, unless exceptional circumstances are present appeals must await final order at which point all issues can be resolved at once. In other words, it must be clear than an interlocutory appeal will materially improve efficiency."); *In re Zech*, 185 B.R. 334, 337 (D.Neb.1995), *citation omitted* ("Indeed, because interlocutory appeals interfere with the cumulative goal of the bankruptcy system . . . they are not favored.").

*Disregard of Facts Alleged in the SAC*

The Litigation Trustee asserts that the appeal deals with pure questions of law and there is a substantial difference of opinion between the bankruptcy court's rulings and rulings of other courts. The Litigation Trustee asserts that the bankruptcy court was not permitted

1    to disregard the well-pleaded facts in the SAC when determining whether to dismiss the
2    claims asserts for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and/or lack of
3    particularity under Fed.R.Civ.P. 9(b). *See Cervantes v. United States*, 330 F.3d 1186, 1187
4    (9th Cir. 2003) (court must take as true all allegations of material fact and construe them in
5    the light most favorable to the non-moving party); *see also Vignolo v. Miller*, 120 F.3d 1075,
6    1077 (9th Cir. 1997). The Litigation Trustee argues that the bankruptcy court's refusal to
7    consider the pleaded facts is contrary to controlling law. *See Bell Atlantic Corp. v. Twombly*,
8    550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (a plaintiff must allege
9    "enough facts to state a claim to relief that is plausible on its face"); *Cataulin v. Wash. Mut.*
10   *Bank, SFB*, 08 CV 2419 JM (NLS), 2009 WL 648921, *2 (S.D.Cal. 2009), *citing U.S. v. City*
11   *of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981) (moving party has a heavy burden to establish
12   "beyond doubt that [the] plaintiff can prove no set of facts in support of his claim which
13   would entitle him to relief").

14   Defendants argue, however, that the bankruptcy court's decision to not adopt the
15   Litigation Trustee's proposed language demonstrates that the first 154 paragraphs were not
16   simply disregarded. Rather, Defendants argue that the bankruptcy court clearly determined
17   that the first 154 were not well pled and that the bankruptcy court was "not obliged to search
18   for legal theories [and facts supporting them if they are] not clearly laid out in [the SAC]."
19   *See Mansour v. Cal-Western Reconveyance Corp.*, CV-09-37-PHX-DGC, 2009 WL 2132695
20   *3 (D.Ariz. 2009); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, n.1 (9th Cir. 2008), *citation*
21   *omitted* ("Judges are not like pigs, hunting for truffles buried in briefs."); *Keenan v. Allan*,
22   91 F.3d 1275, 1279 (9th Cir. 1996) (in discussing summary judgment, court stated that it was
23   not the responsibility of the court to "scour the record in search of a genuine issue of triable
24   fact").

25   Defendants argue that the Ninth Circuit has affirmed the dismissal of a plaintiff's
26   complaint after multiple amendments where the court had instructed that the "[P]laintiffs
27   would be well advised to edit or eliminate their twenty six page introduction and focus on
28   linking their factual allegations to actual legal claims." *McHenry v. Renne*, 84 F.3d 1172,

1176 (9th Cir. 1996) (where plaintiff had been given multiple opportunities to comply, along with specific instructions on how to correct the complaint, and plaintiff still failed to file a compliant complaint, dismissal with prejudice was proper). Indeed, an amended complaint or portions of an amended complaint may be dismissed if the amended complaint is as "verbose, confusing, and conclusory" as the prior complaint. *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981); *see also Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303 (D.C.Va. 1981) (failure to present clear presentation of matters places the onus on the court to decipher which, if any, facts support which claims, as well as to determine whether a plaintiff is entitled to the relief sought).

The bankruptcy court had advised the Litigation Trustee that it would consider each claim as a "free-standing" claim and had twice advised the Litigation Trustee against a verbose complaint. *See* Fed.R.Civ.P. 83(a) ("A judge may regulate practice in any manner consistent with federal law . . . No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."). Furthermore, the bankruptcy court advised the Litigation Trustee that "[a]t a minimum, allegations of fraud must state 'the time, date and specific context or nature of the fraudulent representations or omissions' in order to 'enlighten each defendant as to his or her part in the alleged fraud.'" Response, Ex. A, pp. 3-4. In light of *McHenry* and the notice given by the bankruptcy court, this Court cannot say that a substantial difference of opinion exists between the bankruptcy court's rulings and rulings of other courts. The Court finds this is not an appropriate basis to permit an interlocutory appeal.

The Litigation Trustee also asserts that the bankruptcy court may not relieve a defendant of their obligation to admit or deny allegations of facts. *See* Fed.R.Civ.P. 8(b) ("In responding to a pleading a party must . . . (b) admit or deny the allegations against it by an opposing party."); Fed.R.Bankr.P. 7008(a) (applying Rule 8 to adversary proceedings). Defendants assert, however, that a court may "relieve a defendant of the burden of respond to a complaint with excessive factual detail." *Hearns v. San Bernardino Police Dept.*, 530

- 8 -

F.3d 1124, 1131 (9th Cir. 2008). Indeed, Defendants argue that the bankruptcy court could have dismissed the entire complaint with prejudice instead of imposing the less harsh sanction of only dismissing the claims for actual fraud and RICO.

Again, this Court cannot say that a substantial difference of opinion exists between the bankruptcy court's rulings and rulings of other courts. The Court finds this is not an appropriate basis to permit an interlocutory appeal.

The Litigation Trustee also asserts that there is a substantial difference of opinion and contradictions between the bankruptcy court's Memorandum Decision and its Order. The Litigation Trustee points out that the Order dismissed fraudulent claims under A.R.S. § 44-1004(A)(1) and 11 U.S.C. § 548(a)(1)(A) (e.g., Count 5) although the Motions to Dismiss had been denied with respect to those claims. Motion, Ex. B, pp. 7-8. Further, the Litigation Trustee argues that the Order dismisses "all fraud-related claims and allegations" with prejudice, "specifically including the claims and allegations in Counts 2, 5, 8, 10, 13, 19, and 28 [all fraudulent transfer claims] based on A.R.S. § 44-1004(A)(1) [state law fraudulent transfer] and 11 U.S.C. § 548(a)(1)(A) [federal avoidance of fraudulent transfer], and all other fraud-related claims and allegations contained in Counts 1, 36, 37, 38, 41, 42, 43, 46, 47, 48, 50, 51, 56, and 57." Motion, Ex. A, pp. 1-2. The Litigation Trustee asserts this contradicts the bankruptcy court's determination that the fraudulent transfer theories were "adequately pled." Motion, Ex. B, pp. 7-8.

Defendants agrees that the bankruptcy court denied the motion to dismiss Count 5 in the Memorandum Decision because the concept and theory were adequately pled. However, Defendants point out that the bankruptcy court also clearly stated:

> The Court agrees that wherever the words "fraud," "intent to defraud," "fraudulent intent" or like words are found the counts fail in specifying, with particularity required by Fed. R. Civ. P. 9(b), those facts necessary to breath legal life into the words.

Motion, Ex. B, p. 10. The bankruptcy court, in the Memorandum Decision, then clearly stated which counts would be dismissed. Defendants assert that the bankruptcy court clearly discussed counts where Defendants Gaylord, Thomas, Jaggi, Sullivan, Sr., Sullivan, Jr.,

- 9 -

Malis, Marchetti, and Young received transfers from First Magnus when First Magnus was insolvent or First Magnus received less than reasonably equivalent value and had an unreasonably small capital, or made transfer to an insider not in the ordinary course of business and determined that those A.R.S. §44-1004(A)(2) and 11 U.S.C. §548(a)(1)(B) claims were adequately pled. Therefore, Defendants point out that none of the fraudulent transfer counts were dismissed in their entirety as evidenced by the Court's Memorandum decision denying Defendant Gaylord's Motion to Dismiss Count 5 and Defendant Thomas's Motion to Dismiss Count 8. However, the bankruptcy court found that actual fraud was not pled to particularity requirements of Fed.R.Civ.P. 9(b), *Donnell v. Kowell*, 533 F.3d 762, 771 (9th Cir. 2008), and, therefore, dismissed the fraud claims within Counts 2, 5, 8, 10, 13, 19, and 28.

The Court agrees with Defendants that the bankruptcy court's Order did not clearly contradict the Memorandum Decision. Moreover, in determining whether to exercise its discretion and permit an interlocutory appeal, the Court considers that the Litigation Trustee did not request the bankruptcy court to consider or clarify its Order. *See In re Moerbe*, 03-57260-LMC, 04-5043-LMC, SA-04-CS-801-FB, 2005 WL 3337634, *3 (W.D. Tex. 2005) (as opposed to seeking leave to file the interlocutory appeal the "more appropriate action would have been to file a motion for reconsideration before" the bankruptcy court).

The Litigation Trustee asserts an interlocutory appeal is appropriate because resolution of the appellate issues will advance the ultimate termination of the litigation by crystallizing the issues for discovery and trial and also avoiding a potential retrial should the bankruptcy court ultimately be reversed. *See In re Pacific Forest Products Corp.*, 335 B.R. 910, 924-25 (S.D.Fla. 2005).

Defendants assert, however, that rather than materially advancing the termination of the litigation, review would simply add another layer of litigation. Defendants point out that the Litigation Trustee's claims as to fraudulent transfers are proceeding and, if the bankruptcy court is subsequently reversed, few additional facts will be needed to evaluate the dismissed claims. *See In re MCI WorldCom Communications v. Communications*

*Network, Int'l, Ltd.*, 358 B.R. 76, 80 (S.D.N.Y. 2006). Defendants also assert that, if an interlocutory appeal is permitted, a stay is possible, an appeal to the Ninth Circuit is possible, and the door is open for future interlocutory appeals. The potential piece-meal litigation is not justified because, if the Litigation Trustee succeeds at trial, the dismissed claims would not likely provide any additional recovery because the damages would be duplicative and would only serve to deplete the funds the should be distributed to First Magnus's creditors following resolution of the claims.

The Court finds that it is not clear that an interlocutory appeal will materially improve efficiency. This case does not present exceptional circumstances that warrant the granting of leave to file an interlocutory appeal. The Court declines to exercise interlocutory appellate jurisdiction.

Accordingly, IT IS ORDERED:

1. To the extent this Court issues its ruling herein, the Motion to Expedite Appeal [Doc. 5] is GRANTED.

2. The Motion for Leave to Appeal [Doc. 2] is DENIED.

3. This civil action is DISMISSED and the Clerk of the Court shall close its file in this matter.

DATED this 6th day of August, 2010.

_____
Cindy K. Jorgenson
United States District Judge

- 11 -